**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Maxitransfers LLC,

        Plaintiff,

v.

Karen Rodriguez Olmedo, *et al.*,

        Defendants.

No. CV-24-02716-PHX-JJT

**ORDER**

At issue is Plaintiff Maxitransfers LLC's Motion for Default Judgment (Doc. 27, Mot.) against all Defendants: Karen Rodriguez Olmedo (Ms. Rodriguez Olmedo), Israel Hermilo Martinez Olmedo (Mr. Olmedo), Roberto Esquer Carvajal (Mr. Carvajal), Envios de Dinero Flex LLC (Envios), Carina Gutierrez (Ms. Gutierrez), Multiservicios Claro Que Si LLC (Multiservicios), Ruth Maria Madrid Duran (Ms. Duran), El Paisa Services LLC (El Paisa), and Manuel Armando Garcia Del Castillo (Mr. Castillo). Having reviewed the Motion and supporting declarations, the Court finds default judgment is appropriate and will grant the Motion.

## I.    BACKGROUND

Maxitransfers brought this action on October 8, 2024, alleging claims for civil RICO violations under 18 U.S.C. §§ 1961, 1962 and 1964, common law fraud, breach of contract, breach of fiduciary duty, conversion, and unjust enrichment. (Doc. 1, Compl.) According to the Complaint, Maxitransfers transmits cash for customers to designated third parties pursuant to the customers' specific instructions. (*Id.* ¶¶ 28–34.) Maxitransfers alleges it

entered into contracts—termed money transmission agreements (MTAs)—with Defendants, in which Defendants would act as its agents to facilitate interactions with customers during the transmittal process. (*Id.*) Under the MTAs, Maxitransfers appoints the agent as a trustee and fiduciary for money transmissions by Maxitransfers on behalf of its customers. (*Id.*) The agent receives funds or negotiable instruments from a customer along with instructions to deliver the same amount to a given third party. (*Id.*) Maxitransfers then makes equivalent funds available at the designated destination. (*Id.*) Customers pay a fee to Maxitransfers and Maxitransfers compensates its agent with a commission. (*Id.*) The agent, meanwhile, holds the funds and negotiable instruments the customer provided in trust for Maxitransfers and delivers the funds to Maxitransfers at specified intervals. (*Id.*) Because Maxitransfers advances funds to the customer-designated destination before it receives the funds and negotiable instruments from the agent, it suffers a loss when the funds or negotiable instruments the agent ultimately delivers are rejected by the issuing financial institutions. (*Id.*)

As Maxitransfers alleges in detail in the Complaint, in or around January 2023, Defendants began a scheme to defraud Maxitransfers. (*Id.* ¶ 42.) Specifically, Maxitransfers alleges Defendants Mr. Olmedo and Ms. Rodriguez Olmedo began delivering checks to Maxitransfers issued by various businesses they controlled and drawing on accounts that they knew or should have known lacked sufficient funds. (*Id.* ¶¶ 43–50.) The Olmedos then began delivering stolen checks with forged indorsements and copies of stolen checks to Maxitransfers in June 2023. (*Id.* ¶¶ 52–60.) Mr. Carvajal joined the Olmedos' scheme in or around August 2023, as his business also began delivering copied checks and checks with forged indorsements to Maxitransfers as payment for transactions. (*Id.* ¶¶ 61–66.) Next, Ms. Gutierrez and Envios joined the scheme in or around September 2023 by delivering forged, copied, or fraudulently-indorsed checks to Maxitransfers, including several checks from similar issuers as the Olmedos—indeed one check was identical to a check from Ms. Rodriguez Olmedo. (*Id.* ¶¶ 74–87.) Mr. Castillo and El Paisa joined the scheme around February 2024 by delivering to Maxitransfers

fictitious, copied, forged, and stolen checks, along with checks drawing on accounts with insufficient funds, frequently from the same issuers as the Olmedos and Mr. Carvajal. (*Id.* ¶¶ 116–29.) Ms. Duran and Claro Que Si joined the scheme around the same time and delivered 230 fictitious, copied, or stolen checks to Maxitransfers in a two-week period in May 2024. (*Id.* ¶¶ 130–45.)

Maxitransfers alleges it recovered some funds diverted by Defendants' scheme but, to date, it has not been able to recover $1,343,357.23 it previously transmitted at Defendants' instructions. (*Id.* ¶ 60; Mot. Ex. A, de la Torre Decl. ¶ 29.) Accordingly, Maxitransfers filed its Complaint seeking actual damages, treble damages for Defendants' civil RICO violations, reasonable attorneys' fees and expenses pursuant to the terms of the MTAs, and post-judgment interest. (*Id.*)

After filing the Complaint, Maxitransfers properly served Defendants with the Complaint and Summons pursuant to Federal Rule of Civil Procedure 4 and the Court's Orders. (*See* Docs. 18, 25.) No Defendant appeared or filed an Answer to Maxitransfers' Complaint. (*See id.*)

Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court entered default against Defendants Ms. Rodriguez Olmedo, Mr. Olmedo, Mr. Carvajal, Envios, Ms. Gutierrez, Multiservicios, and Ms. Duran on February 25, 2025, and Defendants El Paisa and Mr. Castillo on April 21, 2025. (Docs. 19, 26.) No Defendant has since contested this matter or moved to vacate the defaults entered by the Clerk of Court, and Maxitransfers now moves for default judgment under Rule 55(b).

## II.     LEGAL STANDARD

After the Clerk of Court enters default, the Court may enter default judgment pursuant to Rule 55(b). The Court's "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Although the Court should consider and weigh relevant factors as part of the decision-making process, it "is not required to make detailed findings of fact." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

The Court considers the following factors in deciding whether default judgment is warranted: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether default is due to excusable neglect, and (7) the policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In considering the merits and sufficiency of the complaint, the Court accepts as true the complaint's well-pled factual allegations, but the plaintiff must establish all damages sought in the complaint. *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

### III.    ANALYSIS

With respect to the *Eitel* factors, Maxitransfers has shown it will be prejudiced without entry of a default judgment, having no other civil remedy at law to pursue the claims alleged; it has demonstrated the merits of its claims; it sufficiently states its claims against Defendants in the Complaint by alleging facts supporting all claim elements; no known disputes of material fact exist because all Defendants defaulted and the Court takes the Complaint's factual allegations as true, *see Geddes*, 559 F.2d at 560; and no evidence suggests default occurred due to excusable neglect, because Defendants were properly served and had sufficient time to respond to the Complaint or contest the Clerk of Court's defaults, *see NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016). The amount of money at stake in this matter, which is relatively significant, weighs neither in favor of nor against entry of default judgment. Finally, although policy generally favors decisions on the merits, the seventh factor is outweighed by the other factors in this case favoring default judgment against Defendants. *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1072 (D. Ariz. 2006). ("[T]he seventh *Eitel* factor is not alone dispositive.").

As for damages, the sum Maxitransfers seeks is proportional to the injury caused because it requests an award of the precise amount of funds it shows Defendants withheld or intentionally diverted from Maxitransfers in breach of the parties' MTAs. *See id.* at

1070–73. Maxitransfers has sufficiently shown actual damages in the amount of $1,343,357.23, which represents the sums Defendants obtained from Maxitransfers via the fraudulent conduct alleged in the Complaint, including: $41,841.62 from Mr. Olmedo's business; $35,852.73 from Ms. Rodriguez Olmedo's Multiservicios Latinos business; $11,025.12 from Ms. Rodriguez Olmedo's Multiservicios Latinos 2 business; $172,598.73 from Ms. Rodriguez Olmedo's Latinos Multiservicios business; $59,163.36 from Ms. Rodriguez Olmedo's Multiservicios Latinos 3 business; $26,075.61 from Ms. Rodriguez Olmedo's Latinos Paqueteria business; $28,751.80 from Ms. Rodriguez Olmedo's Dulceria Apson business; $165,133.80 from Mr. Carvajal's Multilatino Express business; $236,451.67 from Ms. Gutierrez's Envios de Dinero Flex business; $178,188.36 from Mr. Castillo's El Paisa Services business;   $220,791.28 from Ms. Duran's Multiservicios Claro Que Si business; and $167,483.15 from Ms. Duran's second Multiservicios Claro Que Si business. (Mot. Exs. A-14–25.)

Because Maxitransfers has shown that Defendants engaged in collective and widespread fraud, the Court also finds an award of treble damages under 18 U.S.C. § 1964(c) is appropriate for the alleged civil RICO violations. Treble damages here amount to an additional $2,686,714.46. *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee"). "[T]he nature of the RICO offense mandates joint and several liability." *Fleischhauer v. Feltner*, 879 F.2d 1290, 1301 (6th Cir. 1989); *see also Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 272 (9th Cir. 1988).

Maxitransfers has included with its Motion an application for attorneys' fees and expenses with the supporting Declaration as required by Local Rule 54.2. (Mot. Ex. B; *see also* Mot. Exs. A-1–10, A-12–13.) Under that Rule, the Court finds Maxitransfers has satisfactorily demonstrated its eligibility and entitlement to attorneys' fees as well as the

1    reasonableness of its request for $104,416.63. Accordingly, the Court will include the

2    award of attorneys' fees and expenses in the default judgment.

3    **IV.    CONCLUSION**

4          The *Eitel* factors weigh in favor of entry of default judgment. The Court will award

5    $1,343,357.23 from all Defendants jointly and severally as actual damages, an additional

6    $2,686,714.46 from all Defendants jointly and severally in treble damages, s*ee* 18 U.S.C.

7    § 1964(c), and $104,416.63 from all Defendants jointly and severally in attorneys' fees and

8    expenses. The Court will also award post-judgment interest as allowed under 28 U.S.C.

9    § 1961(a).

10          **IT IS THEREFORE ORDERED** granting Plaintiff Maxitransfers LLC's Motion

11    for Default Judgment against all Defendants (Doc. 27).

12          **IT IS FURTHER ORDERED** that, pursuant to Rule 55(b)(2) of the Federal Rules

13    of Civil Procedure, the Clerk of the Court shall enter Judgment in favor of Plaintiff

14    Maxitransfers LLC and against Defendants Karen Rodriguez Olmedo, Israel Hermilo

15    Martinez Olmedo, Roberto Esquer Carvajal, Envios de Dinero Flex LLC, Carina Gutierrez,

16    Multiservicios Claro Que Si LLC, Ruth Maria Madrid Duran, El Paisa Services LLC, and

17    Manuel Armando Garcia Del Castillo, jointly and severally, in the total principal amount

18    of **$4,134,488.32**, which includes **$104,416.63** in reasonable attorneys' fees and expenses.

19    The principal amount shall bear post-judgment interest at the federal rate from the date of

20    Judgment until paid. The Clerk of Court shall also close this case.

21          Dated this 23rd day of June, 2025.

22

23          _____
             Honorable John J. Tuchi
24           United States District Judge

25

26

27

28

- 6 -